IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JENNIFER LYNNE OSTERHOUT                              PLAINTIFF

        V.                      Civil No. 3:16-cv-03100-TLB-MEF

NANCY A. BERRYHILL, Commissioner
Social Security Administration                        DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Jennifer Lynne Osterhout, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB") Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.  PROCEDURAL BACKGROUND:

Plaintiff filed her application for DIB on February 14, 2013, alleging an onset date of February 5, 2013, due to Legg-Calve´-Perthes disease, left hip pain, scoliosis, back pain with a pinched nerve, cane used to ambulate when it is difficult to walk, and possible surgery. (ECF No. 11, pp. 124-130, 148, 201, 220). Based on her work credits, the Commissioner determined that the Plaintiff met the insured status requirements of the Act through December 31, 2017. (ECF No. 10, pp. 131-144).

Plaintiff's application was denied at both the initial and reconsideration levels. Following an administrative hearing on August 5, 2014, an administrative law judge ("ALJ") entered an unfavorable decision. (ECF No. 11, pp. 17-24, 29-55). Plaintiff was present and represented by counsel at the hearing. (ECF No. 11, pp. 29-55).

1

On August 6, 2015, the ALJ concluded that the Plaintiff's only severe impairment was "lumbar degenerative disc disease by imaging without any significant impairment of function by examination with pain as the only symptoms complaint." (ECF No. 11, p. 19). However, the impairment did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (*Id*.). The ALJ found Plaintiff capable of performing the full range of light work. (ECF No. 11, p. 20).

At the time of the administrative hearing held on August 5, 2014, Plaintiff was 37 years of age, and she had obtained a high school diploma and taken some college courses. (ECF No. 11, pp. 36, 48). Plaintiff's past relevant work consisted of working as a school cook. (ECF No. 11, pp. 23, 39). Considering Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), the ALJ determined that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, and that a finding of "not disabled" is directed by Medical-Vocational Rule 202.21. (ECF No. 11, pp. 23-24).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which request was denied on July 22, 2016. (ECF No. 11, pp. 1-6). Plaintiff subsequently filed this action. (ECF No. 1). This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. (ECF Nos. 12, 15).

## II.    APPLICABLE LAW:

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to

support it.  *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision.  *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A plaintiff must show that her disability, not simply her impairment, has lasted for at least 12 consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience.  *See* 20 C.F.R. § 404.1520(a)(4).  Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work

3

experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

## III. EVIDENCE PRESENTED:

The Court has carefully reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and they are repeated here only to the extent necessary.

On December 5, 2005, Plaintiff underwent a left total hip replacement arthroplasty after Dr. William Hefley, Jr., M.D. diagnosed her with osteoarthritis of the left hip secondary to Legg-Calve´-Perthes disease. (ECF No. 11, pp. 289-96). During her post-operative visit on December 19, 2005, Dr. Hefley noted Plaintiff was doing well. (*Id.*).

The medical evidence continues after the alleged onset date of February 5, 2013. On September 3, 2013, Dr. Robert Redd, M.D., a state agency medical consultant, determined at the initial level that Plaintiff's alleged physical impairments were non-severe. (ECF No. 11, pp. 57-61). On October 18, 2013, state agency medical consultant, Dr. Clarence Ballard, M.D., concurred with Dr. Redd's assessment upon reconsideration. (ECF No. 11, pp. 64-70).

On September 16, 2013, Plaintiff presented herself to Ms. Jennifer Henderson, A.P.N. complaining of left hip pain that radiated to the left knee. (ECF No. 11, pp. 259-61). Upon examination, Plaintiff's hip appeared normal, but tenderness was present in the anterior aspect, her range of motion was limited in all planes, she had diffuse weakness, and she had a positive straight leg raising exam. (*Id.*). Meloxicam was prescribed, and an orthopedic referral was made. (*Id.*).

On October 25, 2013, Dr. C. Kris Hanby, M.D., an orthopedic surgeon, examined the Plaintiff and diagnosed her with status post left total hip arthroplasty with recent pain. (ECF No. 11, pp. 282-83). Upon examination, Plaintiff's left hip had pretty good range of motion with 20

degrees internal rotation and 30 degrees external rotation with pain, but she had an antalgic gait to the left. (*Id*.). An X-ray showed no sign of loosening or other abnormality. (*Id*.). Dr. Hanby ordered further laboratory testing to look for occult infection and a bone scan. (*Id*.). Dr. Hanby opined that if the bone scan was normal then it could be neurogenic pain, and a neurologist referral would be necessary. (*Id*.).

On November 20, 2013, a lumbar spine MRI study revealed lower lumbar predominant spondylosis, worst at the L4-5 and L5-S1 levels where there is bilateral lateral recess and neural foraminal narrowing. It was also worse at the L5-S1 level where it is moderate to severe in degree secondary to a central disc extrusion, diffuse disc bulge, and facet ligamentum disease. (ECF No. 11, pp. 280-81).

On December 17, 2013, Plaintiff presented herself to Ms. Heather Terry, A.P.N. at the Northwest Arkansas Neuroscience Institute. (ECF. No. 11, pp. 267, 272-75). Plaintiff reported having pain in the left lateral leg for the past two years. (*Id*.). Ms. Terry noted that Dr. Hanby ruled out issues with her hip prosthesis and infection after results from a bone scan and lab work. (*Id*.). Dr. Hanby ordered an MRI study, and he felt it was related to Plaintiff's low back. (*Id*.). Ms. Terry noted that Plaintiff had a history of back pain, but it had been manageable. (*Id*.).

Upon examination, Plaintiff's lumbar or sacral spine demonstrated no visible abnormalities, normal lordosis, no scoliosis, no spine tenderness on palpation, and no masses; she also had full range of motion, no pain with motion in any direction, and her gait and station were normal. (*Id*.). Ms. Terry noted, however, the MRI study of Plaintiff's lumbar spine revealed multilevel degenerative changes most prominent at L4-5 and L5-S1. (*Id*.). At L5-S1 there was a prominent central disc extrusion, as well as disc bulge and facet hypertrophy, contributing to neuroforaminal narrowing more prominent on the left. (*Id*.). Plaintiff's most prominent radicular

pain was the left lateral thigh, L5 distribution.  She did have some pain down the left buttock that Ms. Terry opined could be S1 radiculopathy, but it did not extend down the posterior leg.  (*Id*.).

Plaintiff was diagnosed with lumbar radiculopathy at L5, sacral radiculopathy at S1, bulging lumbar disc, and lumbar spondylosis.  (*Id*.).  Plaintiff's treatment consisted of nonsteroidal anti-inflammatory drugs ("NSAIDS").  (*Id*.).  Ms. Terry referred Plaintiff to pain management for injection therapy and a physical therapy evaluation.  (*Id*.).  If no improvement occurred with this treatment, Ms. Terry was going to discuss surgical consideration with neurosurgeon Dr. Larry Armstrong, D.O.  (*Id*.).

On December 20, 2013, Mr. Dennis Fellers, R.P.T. of Ozark Physical Therapy assessed that Plaintiff had good potential for rehabilitation to reduce pain, hypertonicity, and improve abdominal and paraspinal strength and coordination through stabilization.  (ECF No. 11, pp. 286-87).  The physical therapy plan was three visits per week for a month.  (*Id*.).

On December 30, 2013, Plaintiff returned to the Northwest Arkansas Neuroscience Institute to see Dr. Brent Weilert, M.D., a pain management specialist.  (ECF No. 11, pp. 276-78).  Plaintiff complained her back pain was not relieved by physical therapy.  (*Id*.).  Upon examination, Plaintiff's lumbar spine at L4-5 and left paraspinal at L4-5 had extension that was painful.  (*Id*.).  Dr. Weilert diagnosed her with a bulging lumbar disc.  (*Id*.).  As a result, Dr. Weilert administered a multi-level lumbar transforaminal epidural steroid injection.  (*Id*.).

On January 24, 2014, Mr. Fellers submitted Plaintiff's physical therapy discharge summary to Dr. Dan Bell, M.D., Plaintiff's primary care physician, after four weeks of therapy.  (ECF No. 11, p. 283).  Mr. Fellers noted Plaintiff had not complained of pain in the lower extremities, hips, or lumbar spine for approximately ten days.  (*Id*.).  Plaintiff had progressed on her dynamic

stabilization for both sacroiliac and lumbar region, and she progressed on the treadmill for 10 minutes, reclined stepper times 250 steps.  (*Id*.).

## IV.    DISCUSSION:

Plaintiff argues the following issues on appeal:  (1) whether substantial evidence supports the ALJ's RFC determination; (2) whether the ALJ improperly discredited Plaintiff's subjective complaints; (3) whether Plaintiff met Listing 1.04; and, (4) whether substantial evidence supports the ALJ's determination that Plaintiff retained the ability to perform other work that exists in the national economy.  Of particular concern is the ALJ's RFC determination that Plaintiff is capable of performing the full range of light work.  (ECF No. 11, pp. 20-23).  Following a thorough review of the record, the undersigned finds that remand is necessary.

The record does not provide evidence that conclusively supports the ALJ's RFC finding. The ALJ did not adequately account for the limitations resulting from Plaintiff's severe impairment of lumbar degenerative disc disease, and how that impairment affects her ability to perform light work.

During the relevant period, Plaintiff consistently reported she had left hip pain that radiated to her left knee and radiating low back pain that was exacerbated by lifting and sitting.  (ECF No. 11, pp. 259-61, 272-78, 282-83).  Significantly, a lumbar spine MRI study from November 20, 2013, provided objective evidence that supported Plaintiff's pain allegations.  The MRI study revealed lower lumbar predominant spondylosis, worst at the L4-5 and L5-S1 levels where there was bilateral lateral recess and neural foraminal narrowing, and at the L5-S1 level where it was moderate to severe in degree secondary to a central disc extrusion, diffuse disc bulge, and facet ligamentum disease.  (ECF No. 11, pp. 280-81).

Additionally, medical providers determined Plaintiff's symptoms warranted further insight. For instance, orthopedic surgeon, Dr. Hanby, referred Plaintiff to neurology after objective testing showed no issues with her left hip prosthesis or signs of infection. (ECF No. 11, pp. 267, 272-75, 282-83, 293-96). On December 17, 2013, Ms. Terry at the Northwest Arkansas Neuroscience Institute diagnosed Plaintiff with lumbar radiculopathy at L5, sacral radiculopathy at S1, bulging lumbar disc, and lumbar spondylosis. (ECF. No. 11, pp. 267, 272-75). Ms. Terry determined Plaintiff's current NSAID treatment was insufficient, and she referred Plaintiff to pain management and physical therapy. (*Id*.). Surgical consideration was going to be discussed with Dr. Armstrong, a neurosurgeon, if there was no symptom improvement. (*Id*.).

Subsequently, Dr. Weilert, a pain management specialist, administered two multi-level lumbar transforaminal epidural steroid injections – one in December 2013 and a second in April 2014. (ECF No. 11, pp. 29-55, 276-78). At the hearing, Plaintiff testified the injections initially decrease her pain and help for five to six months, but then more injections are necessary due to increasing pain over time. (ECF No. 11, pp. 29-55). Plaintiff attended physical therapy for a month, and she was discharged from therapy after signs of improvement. (ECF No. 11, pp. 283, 286-87). The capabilities Plaintiff obtained in physical therapy, treadmill use for 10 minutes and a reclined stepper for 250 steps, are not indicative that she can consistently perform the full range of light work. (ECF No. 11, p. 283). The test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *See McCoy*, 683 F.2d at 1147. Although discharged from physical therapy, Plaintiff testified that further treatment was discussed, and she stated she had an upcoming appointment with a neurosurgeon. (ECF No. 11, pp. 29-55). Unfortunately,

there is no additional evidence in the record that Plaintiff saw Dr. Armstrong or another neurosurgeon.

Furthermore, the opinion evidence in the record is limited. The only assessments were provided by state agency medical consultants prior to much of the submitted medical evidence, and importantly, the lumbar spine MRI study. Drs. Redd and Ballard ultimately determined Plaintiff's alleged physical impairments were non-severe. (ECF No. 11, pp. 57-61, 64-70). The ALJ gave their opinions little weight because the additional evidence submitted at the hearing level revealed Plaintiff had a severe physical impairment of lumbar degenerative disc disease. (ECF No. 11, pp. 19, 22).

Additionally, no physical RFC assessments were provided by Plaintiff's treating physicians, and the ALJ did not order any consultative examinations. The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. *See* 20 C.F.R. § 404.1512. "[I]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Freeman*, 208 F.3d at 692; *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). The ALJ was essentially "playing doctor" after he disregarded the opinions of both non-examining state agency medical consultants while lacking a sufficient basis within the other evidence of record to support his RFC determination. *Pates-Fires v. Astrue*, 564 F3d 935, 947 (8th Cir. 2009), citing *Rohan v. Chater,* 98 F.3d 966 (7th Cir. 1996) ("ALJ's must not succumb to the temptation to play doctor and make their own independent medical findings.").

The ALJ attempted to discredit Plaintiff's subjective complaints for a number of reasons, including the following: (1) the degree of pain relief seeking behavior and treatment was not indicative of a degree of pain that would limit activities beyond the scope of the RFC; (2) her pain was well controlled with prescription medications; (3) no treating physician opinion in the record; and, (4) Plaintiff's activities of daily living. (ECF No. 11, pp. 21-22). These reasons were not significant enough to undermine the objective evidence contained in the record. Plaintiff's lumbar spine degenerative disc disease is limiting, and because the evidence does not make clear Plaintiff can perform the full range of light work, the undersigned finds remand is necessary to allow the ALJ to consider this further.

On remand, the ALJ is directed to contact Plaintiff's pain management specialist, Dr. Weilert, requesting that he: (1) review Plaintiff's medical records; (2) complete a physical RFC assessment regarding Plaintiff's functional capabilities; and, (3) state the objective basis for the assessment so that an informed decision can be made by the ALJ regarding Plaintiff's ability to perform work activities on a sustained basis. The assessment should specifically address how long Plaintiff can sit, stand, and walk during an eight-hour workday, and indicate the extent of her lifting and carrying abilities.

The ALJ is also directed to order a neurological consultative examination, and the consultative examiner should be asked to review the medical evidence of record; perform examinations and appropriate testing; assess the need for surgical intervention due to her lumbar degenerative disc disease; and, complete a physical RFC assessment of Plaintiff's abilities to perform work related activities. With this additional medical opinion evidence, the ALJ should then reconsider the Plaintiff's RFC.

## V.     CONCLUSION:

Based on the foregoing, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 9th day of April 2018.

/s/Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE